UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| MICHELLE TAYLOR, | Case No. 3:13-cv-00035-MMD-VPC |
| Petitioner, | ORDER |
| v. | |
| CAROLYN MYLES, | |
| Respondent. | |

This counseled petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 by state prisoner Michelle Taylor is before the Court for final disposition on the merits (ECF No. 1).

I.   **PROCEDURAL HISTORY & BACKGROUND**

On November 6, 2009, a jury convicted Taylor of lewdness with a child under 14 years of age and not guilty of indecent or obscene exposure (exhibit 49).[1] On November 13, 2009, Taylor, through the county public defender, filed a motion for judgment of acquittal. (Exh. 54.) The state district court sentenced her to life in prison with parole eligibility after ten years. (Exh. 59.) The judgment of conviction was filed on April 21, 2010. (Exh. 60.)

Taylor appealed. (Exh. 62.) After Taylor filed the opening brief, her appellate counsel moved to associate out-of-state counsel, Donald Bergerson (Taylor's current federal habeas counsel), to appear as co-counsel. (Exhs. 76-78.) The Nevada Supreme

---

[1] The exhibits referenced in this order are exhibits to respondents' motion to disqualify counsel, ECF No. 24, and are found at ECF Nos. 25-28.

Court granted the motion. (Exh. 80.) On October 27, 2011, the Nevada Supreme Court affirmed the conviction, and remittitur issued on November 21, 2011. (Exhs. 96, 98.)

Taylor filed a counseled petition. (ECF No. 1.) Respondents have answered the petition (ECF No. 40), and Taylor replied (ECF No. 43).

## II.   LEGAL STANDARD UNDER THE ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT (AEDPA)

28 U.S.C. § 2254(d), a provision of the Antiterrorism and Effective Death Penalty Act (AEDPA), provides the legal standards for this Court's consideration of the petition in this case:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693-694 (2002). This Court's ability to grant a writ is limited to cases where "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. 86 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 131 S.Ct. 1388, 1398 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Andrade*, 538 U.S. at 74 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409).

In determining whether a state court decision is contrary to federal law, this court looks to the state courts' last reasoned decision. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000). Further, "a determination of a factual issue made by a state court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

### III.    INSTANT PETITION

Taylor raises a single ground in her federal petition. (ECF No. 1.) She argues that her sentence of life in prison with the possibility of parole after ten years is excessive and constitutes cruel and unusual punishment in violation of the Eighth Amendment. (ECF No. 1 at 10-17.) Taylor was convicted of lewdness with a child under age fourteen for maneuvering a thirteen-year-old boy's hand to fondle her breast and kissing him. She contends that a life sentence is grossly disproportionate to her crimes. (*Id.*)

The Eighth Amendment forbids cruel and unusual punishment, such as "barbaric punishments," *Solem v. Helm*, 463 U.S. 277, 284 (1983), and "extreme" sentences that are "grossly disproportionate" to the crime, *Ewing v. California*, 538 U.S. 11, 23 (2003). The Eighth Amendment does not, however, require strict proportionality between crime and sentence. *Id.* In *Lockyer*, the Supreme Court invoked a "gross disproportionality principle," the "precise contours of [which] are unclear," and which applies "only in the 'exceedingly rare' and 'extreme' case." 538 U.S. at 72-73 (citations omitted). In

determining whether a sentence is grossly disproportionate, the reviewing court considers the severity of the sentence, the gravity of the offense, and the defendant's criminal history. *Taylor v. Lewis*, 460 F.3d 1093, 1098-1101 (9th Cir. 2006) (upholding a sentence of 25 years to life under California's three-strikes law). Successful challenges based on proportionality are "exceedingly rare." *Id.* at 1098. A long sentence may be constitutional even if the most recent offense was minor or nonviolent. *See, e.g., Andrade*, 538 U.S. at 77; *Ewing*, 538 U.S. at 30-31; *Rummel v. Estelle*, 445 U.S. 263, 285 (1980).

In *Solem*, the Supreme Court held that the sentence of life without the possibility of parole under a recidivist statute for uttering a "no account" check for $100 violated the Eighth Amendment. 463 U.S. at 284. The Court considered that petitioner's previous convictions — third-degree burglary, obtaining money under false pretenses, grand larceny, driving while intoxicated — were all nonviolent, were not crimes against a person, and alcohol was a contributing factor in each case. *Id.* at 279-280. However, in *Andrade*, the Court upheld two terms of 25 years to life under California's three-strikes law where Andrade was arrested for stealing videotapes at two Kmart stores and had three previous first-degree residential burglary convictions. *Andrade,* 538 U.S. at 68, 77. The Court also upheld the three-strikes law sentence in *Ewing*, where Ewing was sentenced to 25 years to life for felony grand theft when he stole three golf clubs worth about $1200. *Ewing,* 538 U.S. at 20. Ewing had three prior felony burglary convictions and one felony robbery conviction. *Id.* at 19-20.

The Nevada Supreme Court pointed out that Taylor did not argue that her sentence is not within the statutory limits or that the sentencing scheme is unconstitutional. In affirming Taylor's conviction, the state supreme court reasoned:

> The Eighth Amendment to the United States Constitution prohibits the infliction of cruel and unusual punishment, and therefore, "forbids . . . extreme sentences that are 'grossly disproportionate' to the crime." *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (quoting *Solem v. Helm*, 463 U.S. 277,288,303 (1983)); U.S Const. amend. VIII. Similarly, this court has held that "[a] sentence within the statutory limits is not 'cruel and unusual punishment unless the statute fixing punishment is unconstitutional or the sentence is so unreasonably disproportionate to the offense as to shock the conscience.'" *Blume v. State*, 112 Nev. 472, 475, 915 P.2d 282,

4

> 284 (1996) (quoting *Culverson v. State*, 95 Nev. 433, 435, 596 P.2d 220, 222 (1979)).
>
> NRS 201.230(1) states: A person who willfully and lewdly commits any lewd or lascivious act, other than acts constituting the crime of sexual assault, upon or with the body, or any part or member thereof, of a child under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of that person or of that child, is guilty of lewdness with a child.
>
> Because Taylor does not challenge the constitutionality of the statute, we are faced only with the question of whether the statutory sentence is grossly disproportionate to the offense. In this case, the State presented evidence that Taylor straddled E.E., a 13 year old boy, removed her shirt, placed E.E.'s hand on her breast, and asked him to have sex with her. Taylor's actions fall within the conduct that [sic] NRS 201.230(1). NRS 207.230(2) requires as punishment for a first-time offender, "imprisonment in the state prison for life with the possibility of parole, with eligibility for parole beginning when a minimum of 10 years has been served., and may be further punished by a fine of not more than $10,000." This was sufficient evidence to convict Taylor of violating NRS 201.230 and the district court sentenced her to life in prison with the possibility of parole after ten years. Here, the statute's required sentence is not so unreasonably disproportionate to the offense as to shock the conscience. Thus, Taylor's sentence violates neither the United States nor the Nevada Constitutions.

(Exh. 96.)

The state-court record reflects the following: Taylor was tried for count 1 — lewdness with a child under fourteen years of age; or in the alternative to count 1, count 2 — attempted statutory seduction, a felony; and count 3 — indecent or obscene exposure. (*See* Exh. 43B at 201.) The victim, age thirteen at the time of the incident, testified that he was at Taylor's house with his ten-year-old brother, and he went into Taylor's bedroom to ask her if they could play Playstation. (Exh. 45 at 9-43.) She told him to close the door and sit down; he sat down on the edge of the bed. Taylor took off her sweater, pushed him down with both hands, got on top of him and grabbed his right arm and made him feel her breasts under her bra. She started kissing him on the cheeks and forehead; she tried to kiss him on the lips but he did not let her. Taylor told him to "fuck her" but he told her no because he wanted to wait until he was older. He testified that the events lasted about twenty-five minutes. He recalled specifically what both he and Taylor were wearing. Taylor pulled her pants down a bit. She tried to pull his sweatshirt off but he pulled it back on. He did not attempt to get up because he was shocked and scared.

Taylor's mother then walked into the bedroom, Taylor covered herself up, and the victim got up and said he had to go. Taylor said ok, and "flashed" him by unhooking her bra and showing him her breasts. He told his brother they had to go, and they ran all the way home. He told his mom what had happened when he got home. (*Id.*)

The younger brother testified that when Taylor's mother opened the door and went into to Taylor's room, he saw Taylor wearing pants and a brownish bra. (*Id.* at 68, 70-73.) He stated that when his brother came out of Taylor's room his eyes were red, and he looked like he had been crying. (*Id.*)

The jury convicted Taylor of count 1, lewdness with a minor under age fourteen, and acquitted her of count 3, indecent or obscene exposure. (Exh. 49.) While Taylor's county public defender filed a motion for judgment of acquittal days after the jury verdicts (Exh. 52), neither party explains, nor does the record before this Court reflect, any disposition of that motion.

The sentencing transcript reflects that Taylor had one prior felony theft conviction in Indiana. (Exh. 59 at 3-4.) The state district court imposed the sentence prescribed by statute of life with the possibility of parole after ten years. (Exh. 59.) The court then addressed Taylor:

> All right, Ms. Taylor, you were charged with a crime that carried this particular sentence. Apparently, you weren't offered any plea deal. Why you were charged with these crimes, you know, you, in particular, but anybody, I don't know.
>
> You know, there's — I've done a lot of these cases, and I can't figure it out to tell you the truth. I don't know why they charge what they charge, and who they charge, why they charge, and why they give plea bargains to some and others not. I don't know.
>
> But I know that we've had a jury trial and you were charged and this is the sentence. Good luck.

(*Id.* at 15.)

While Taylor's sentence of life with the possibility of parole after ten years is a significant sentence, Taylor simply has not demonstrated that it is so grossly disproportionate as to make hers one of the exceedingly rare and extreme cases where

the sentence violates the Eighth Amendment. She has not carried her burden of showing that the Nevada Supreme Court's adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or was based on an unreasonable determination of the facts in light of the evidence presented in the state-court proceeding. 28 U.S.C. § 2254(d).

Accordingly, the petition is denied in its entirety.

### IV. CERTIFICATE OF APPEALABILITY

This is a final order adverse to the petitioner. As such, Rule 11 of the Rules Governing Section 2254 Cases requires this Court to issue or deny a certificate of appealability (COA). Accordingly, the Court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *Id.*

Having reviewed its determination and ruling in adjudicating Taylor's petition, the Court finds that reasonable jurists might find this Court's assessment of the constitutional claim debatable or wrong. *Slack*, 529 U.S. at 484. The Court therefore grants a certificate of appealability for its resolution of Taylor's claim.

### V. CONCLUSION

It is therefore ordered that the petition (ECF No. 1) is denied in its entirety.

It is further ordered that a certificate of appealability is granted.

7

It is further ordered that petitioner's motion for bond or release pending adjudication (ECF No. 46) is denied as moot.

It is further ordered that the Clerk enter judgment accordingly and close this case.

DATED THIS 21st day of March 2017.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE